IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:19CV330 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $3,745.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1.     This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange.

2.     This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3.      The defendant property is $3,745.00 in U.S. Currency, which was seized on July 18, 2018, in Archdale, North Carolina, and is currently in the custody of the United States Marshal Service.

4.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property.    This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6.      Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7.      The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 25th day of March, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney


/s/ Steven N. Baker
Steven N. Baker
Assistant United States Attorney
N.C. Bar No. 36607
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: (336) 333-5351
Email: steve.baker3@usdoj.gov

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Anthony Cugino
Task Force Officer
Drug Enforcement Administration

# DECLARATION

I, Anthony W. Cugino, Task Force Officer with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following information is true and correct to the best of my knowledge, information, and belief:

1.      I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.  I have been a Task Force Officer (TFO) with DEA since 2016, and I am currently assigned to the DEA Atlanta Field Division, Greensboro Resident Office.  I have been employed as a City of Archdale Police Officer since 2006.  In March of 2010, I was assigned to the Archdale Police Department Criminal Investigation Division.  My primary responsibilities are to investigate drug complaints inside the city limits of Archdale.  I have a Bachelor of Science Degree in Criminal Justice from Liberty University.  I have received over nineteen-hundred (1900) hours of police related training in the purchase of drug/narcotics through various street level operations, which involved the use of confidential sources.  I have also worked numerous cases in an undercover capacity and purchased illegal substances.  I have attended a Police Law Institute class, which focused on police search and seizure.  I am assigned to the Internet Crimes Against Children (ICAC) Task Force and have in excess of one-hundred (100) hours of training for cases that involve child exploitation.  I have completed forty (40) hours of instruction in Interview and Interrogation. I am a Field Training Officer for the Archdale Police Department and have been responsible for training new police officers since February of 2009.  I have obtained my Advanced Law Enforcement Certificate from the North Carolina Criminal Justice Training and Standards



GOVERNMENT EXHIBIT

A

Commission. I have participated in hundreds of cases that involve the violation of the North Carolina General Statutes that govern controlled substances and related crimes. In the time that I have been in law enforcement, I have prepared fifty (50) search warrants and participated in over eighty (80) search warrants. I have made over two-hundred fifty (250) drug arrests which resulted in both state and federal prosecutions. I have purchased cocaine, crack cocaine, marijuana, heroin, ecstasy, and methamphetamine while acting in an undercover capacity. Because of my training and experience, I am aware of the different types of controlled substances and the way controlled substances are packaged, distributed, and sold.

2.     This declaration is submitted in support of a Verified Complaint of Forfeiture for $3,745.00 in U.S. currency seized on July 18, 2018, from Latisha BROWN in Archdale, North Carolina.

3.     Based on the investigation described below, there is probable cause to believe that $3,745.00 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

4.     The facts and circumstances set forth in this Declaration are based upon information provided by other law officers and my own personal knowledge and experience. Since this declaration is being submitted for a limited purpose, I am not including all the facts and information, which I have learned about or obtained during the course of this investigation.

5.     On Wednesday, July 18, 2018, at 9:35 a.m., NC Division of Community Corrections Officer Globuschutz, requested the assistance of Archdale Police Department regarding narcotics located at BROWN's residence.

6.      Upon arrival, Archdale Police Department Officer Justin Baxley met with Probation Officer Globuschutz, who advised he and his fellow probation officers went to "NI's" residence for a probation compliance check around 9:00 a.m.  Globuschutz advised the location is the address "NI" has listed with probation as his residence and where he resides with his mother. When the probation officers arrived at the residence, they spoke with "NI's" mother who advised them that "NI" was at his girlfriend's residence.

7.      Probation officers then went to the girlfriend's residence, and made contact with the Latisha Ronea BROWN.  Upon making contact with BROWN, officers advised they smelled the strong odor of marijuana.  Officers questioned BROWN regarding the strong odor of marijuana and she stated that she and "NI" had just finished smoking some marijuana prior to officers' arrival. Officers then asked for consent to search the residence, and BROWN provided them consent.

8.      While searching the residence, probation officers located narcotics, paraphernalia, and a large sum of cash indicative of narcotic sales.  The following narcotics were located in a Frosted Flakes cereal box stored on top of the kitchen refrigerator: 1.5g of an off-white powder substance that was consistent with heroin stored in a clear plastic tied bag (not field tested due to risk of exposure to officers, but submitted to SBI for testing), and a tied plastic bag containing five green 2mg Alprazolam pills, one white 2mg Alprazolam pill, and one white 325mg Acetaminophen/10mg Oxycodone pill.  Also on top of the refrigerator was a 1.5g marijuana cigarette and a small silver bag containing a multi-colored glass smoking pipe containing burnt marijuana residue.  All narcotics and paraphernalia were seized by Officer Baxley as evidence and stored at the Archdale Police Department.  "NI" denied that the narcotics were his, and since BROWN is the lessee of the residence, she was charged with possessing the narcotics and paraphernalia.

9.      Officers located $3,255.00 in U.S. currency (various denominations) in a kitchen drawer.  They also located an additional $400.00 in U.S. currency ($20 denominations) in the bedroom, in the top left drawer of a black chest of drawers.  On top of the chest of drawers was $90.00 in U.S. currency in various denominations.  All of the U.S. currency was seized as drug proceeds.

10.      Officer Baxley asked BROWN why she had a large sum of cash in her residence, and she stated that she lost her SunTrust bank card recently and withdrew all funds from her account to avoid someone gaining access to her account.  Officer Baxley informed her to obtain documentation from SunTrust to confirm her statement, and the currency could possibly be returned to her, however, she was unable to provide documentation.  When asked about the narcotics seized, both BROWN and "NI" denied possession.

11.      While searching the residence, probation officers located "NI's" dirty/worn clothes in BROWN'S bedroom laundry hamper. It is believed that "NI" either resides with BROWN or stays there frequently.

12.      BROWN was arrested for Felony Possession Heroin, Misdemeanor Possession of Marijuana, Simple Possession of Schedule II CS, and Simple Possession of Schedule IV CS.  BROWN was taken to Randolph County Jail and posted bond the same day.  All charges against BROWN were dismissed.

13.      "NI" was arrested for violating his probation.  "NI" was taken to Randolph County Jail and posted bond the same day.  "NI's" criminal history showed no prior drug related charges, however, "NI" is a validated gang member through the High Point Police Department. "NI" is unemployed.

14.     All of the U.S. currency was seized as drug proceeds by Officer Baxley and transported to the Archdale Police Department.

15.     On July 27, 2018, Officer T. Keaton of the Archdale Police Department conducted a free air sniff of the U.S. currency with canine Storm.  Canine Storm alerted to the presence of narcotics on the seized U.S. currency.

16.     Officer Keaton attended Basic Law Enforcement Training at Davidson County Community College. Officer Keaton has been employed by the Archdale Police Department since May of 2010.  After basic training, Officer Keaton worked at a local park in Archdale, North Carolina, from October of 2010 until July of 2011.  Officer Keaton was then transferred to patrol in July of 2011 and continues his service with the Archdale Police Department.  In December of 2013, Officer Keaton was assigned a canine and completed one-hundred twenty (120) hours of Basic Canine Handler Training.  Officer Keaton was assigned a dual-purpose canine and continues to handle the same canine. Officer Keaton has completed more than seven-hundred twenty-two (722) hours of canine training throughout his career.  Many of those hours consisted of narcotic detection.   Officer Keaton effectively used this training to locate the following concealed controlled substances: marijuana, heroin, powder and crack cocaine, methamphetamine and ecstasy.  Officer Keaton has completed more than seventy (70) drug or drug related arrests in his career. Officer Keaton has assisted many other officers with drug related arrests while training others or during other Agency assists when needed.  Officer Keaton also works on a patrol team and assists fellow officers on his team with drug-related arrests.  In April of 2018, Officer Keaton was placed on a criminal interdiction team with Officer A. Lanier from the High Point Police Department.  Officer Keaton completed approximately eighty (80) hours of on the job training with Officer Lanier who had more than ten (10) years of experience working in criminal

interdiction. During this training, Officer Keaton and Officer Lanier located over four-hundred eighty (480) pounds of high-grade marijuana while working Interstate 85 in Archdale, North Carolina. Due to staffing shortages, Officer Keaton was placed back on patrol in July of 2018.

17. Canine Storm is a seven (7) year old Dutch Shepherd, a breed specifically selected for their keen senses and ability to be trained to detect the odor of controlled substances. Canine Storm has proven to be reliable using his senses to locate narcotic training aids of actual controlled substances. At the time of the seizure, Canine Storm was certification through the National Narcotic Detector Dog Association (NNDDA). The NNDDA requires the handler and his canine to successfully locate unknown drug hides of marijuana, cocaine, heroin, methamphetamine and ecstasy. Canine Storm is trained to sit and stare at the area where he detects the odor of a controlled substance listed above, this behavior is defined as a positive alert or indication. Canine Storm has reliably detected large amounts of U.S. currency and drugs that have been concealed inside automobiles since being placed in service.

18. On August 2, 2018, The U.S. currency was taken to State Employees' Credit Union for an official combined count of $3,745.00, and turned into Cashier's Check #062774, made payable to the U.S. Marshal Service. The U.S. Marshal's Service has custody of the $3,745.00 in U.S. currency.

19. DEA adopted the individual seizures of U.S. currency and began administrative forfeiture proceedings. Notice of the forfeiture proceedings for the $3,745.00 in U.S. currency from BROWN was published on an official government internet site (www.forfeiture.gov) from August 27, 2018 to September 25, 2018. On October 27, 2018, DEA received a claim to the defendant $3,745.00 in U.S. currency from BROWN. As a result, the administrative forfeiture

proceedings was terminated and the seizure was referred to the United States Attorney's Office for judicial forfeiture.

20. Based on the foregoing, your declarant maintains there is probable cause to believe that the $3,745.00 in US Currency seized on July 18, 2018, is therefore subject to seizure and forfeiture pursuant to 18 U.S.C. 981(a)(1)(c) and 21 U.S.C. 881(a)(6).

Anthony Cugino
Task Force Officer
Drug Enforcement Administration